UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Lotte Colbert | Kathy Huang |
| Robert Gianelli | Robert Phillips, Jr. |
| Ronald Marron | Terence Hawley |
| | William Higgins |

**Proceedings:**   **PLAINTIFFS' MOTION TO CERTIFY CASE AS A CLASS ACTION** (filed September 24, 2013) [Dkt. Nos. 130 & 138]

**DEFENDANT'S EX PARTE APPLICATION TO STRIKE PORTIONS OF PLAINTIFFS' REPLY BRIEF** (filed May 22, 2013) [Dkt. No. 214]

## I.   INTRODUCTION

On June 17, 2011, plaintiff Rosalie Vaccarino ("Vacacarino") filed this putative class action against defendant Midland National Life Insurance Company ("defendant" or "Midland") in the Los Angeles County Superior Court.  On June 15, 2011, defendant removed the action to federal court.  The gravamen of Vaccarino's complaint is that Midland made representations regarding premium bonuses and other benefits, while failing to adequately disclose that the costs of bonuses and exorbitant agent commissions would be imposed on purchasers, accompanied by unenforceable surrender charges and interest adjustments.  Based on the foregoing, plaintiffs bring claims for violation of California Business and Professions Code § 17200, et seq. ("Unfair Competition Law" or "UCL"), fraud, breach of contract, and declaratory relief.

After several rounds of motion practice, plaintiff filed the operative Third Amended Complaint ("TAC") on May 3, 2012, and named David Lee Tegen as an additional plaintiff.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

On September 24, 2012, plaintiffs moved to certify a class and subclass comprised of:

All California residents (persons, trusts, or entities) who purchased Bonus 5, Bonus 10, Bonus 11, Legacy Select, Legacy Bonus 5, Legacy Bonus 11, and Veridian Plus deferred annuities from Midland when they (or the annuitants) were age 64 or younger.

All California residents (persons, trusts, or entities) who purchased Bonus 10, Bonus 11, Legacy Select, Legacy Bonus 5, Legacy Bonus 11, and Veridian Plus deferred annuities from Midland when they (or the annuitants) were ages 60 through 64.

See TAC ¶ 26 (as modified by Pls.' Mot. at 1, fn. 1). These seven annuity products are the "Class Products." Defendant opposed plaintiffs' motion on December 5, 2012. Pursuant to the parties' stipulation, the Court permitted defendant to file a supplemental opposition on May 1, 2013, addressing new evidence that defendant had recently obtained in discovery. Dkt. No. 200. Plaintiffs replied on May 13, 2013.[1] The Court held a hearing on June 17, 2013. After considering the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

### A. Midland's Deferred Annuity Products

Beginning in 1999, Midland developed deferred annuity products that promise a "bonus" to consumers, promise certain levels of growth, and provide high sales

---

[1] Defendant also filed an ex parte application to strike substantial portions of plaintiffs' reply brief, contending that plaintiffs had impermissibly introduced new evidence and argument. Much of defendant's ex parte application, however, is a surreply rather than an application to strike "scandalous" or "impertinent" material. See Fed. R. Civ. P. 12(f). The Court DENIES Midland's application but exercises its discretion to consider Midland's arguments contained therein.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

commissions to the independent agents who sell Midland's products.  See Depo. of Jon Newsome at 262–266, 267.[2]  Midland promoted these features of its annuity products in advertisements direct at recruiting agents to sell its products. Pls.' Ex. 1 at 47–49, 98–101 (stating in bold, enlarged type that the Midland National Legacy Bonus 11 offered "11% first-year Premium Bonus" and "9% Commission").  Midland also claimed that this bonus could be used to offset any surrender charges that a consumer would incur in switching from one deferred annuity product to Midland's product.  See Pls.' Ex. 1 at 52.[3]  Plaintiffs' proposed class definitions are limited to Midland products containing this bonus feature.[4]

Sales materials directed at consumers similarly promoted the bonus and the investment growth potential of Midland's annuity products.  See, e.g., Pls.' Ex. 1 at 61 (brochure for Bonus 11 annuity); Decl. of Bryan Stout, Ex. A (Bonus 5 product brochure); Ex. B (Bonus 10 product brochure); Ex. C (Bonus 11 product brochure); Ex. D (Veridian Plus product brochure); Exs. K–N (Legacy products brochures).  By 2002, Midland was selling approximately $2 billion in deferred annuity products.

However, these representations of a "bonus" and "investment growth" were false, according to plaintiffs.  Without informing purchasers, Midland charged the bonus and high commissions costs back to purchasers through the use of lower "credited rates," or

---

[2] Defendant objects to the use of the Newsome Deposition in this litigation, contending that the evidence is speculative, lacking in foundation, and misleading, and not relevant to the instant litigation.  This deposition was taken during the Peterman litigation.  To the extent that Newsome testified to factual matters that are also relevant to the instant dispute, the Court finds that his testimony may be considered here.

[3] Midland notes that plaintiffs do not contend that this alleged representation was disseminated uniformly to the class as a whole and therefore could not serve as the basis for plaintiffs' claims on a classwide basis.  The Court agrees.

[4] The "bonus" is applied to the initial premium paid by the purchaser to obtain the annuity.  For example, a $10,000 investment into an annuity providing a 10% bonus would give the purchaser an initial "accumulation value" of $11,000.  See Yanacheak Decl. ¶¶ 2–3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

the interest that Midland would credit to consumer's accounts on a yearly basis.  As such, purchasers in fact obtained no bonus, as it was fully recouped by Midland, and the growth potential of the annuities was further undermined by high agent commissions.

The Class Products include "fixed" and "index" annuities.  Fixed annuities are credited with a "current interest rate" that is guaranteed for the first year, and then a "renewal" rate in subsequent policy years, which depends upon Midland's assumptions as to its future yields on investment assets, costs associated with the annuity, and its profit margins.  Yanacheak Decl. ¶ 8.  The crediting rate for index annuities depends upon the performance of particular stock market indices, the crediting method selected by the policyholder, and any limits set by Midland on potential returns on investment.  Whether fixed or index accounts, the Class Products also have guaranteed minimum crediting rates set forth in the annuity contract.  Id. ¶ 9.  Plaintiffs do not contend that Midland ever credited rates below these floors.

Thus, Midland's pricing model (after any guaranteed initial crediting rates) calculates a "pricing spread" or "target spread," which is the difference between the assumed rate of return on Midland's investment of the purchaser's premiums and the "credited rate" that is returned to purchasers.  Merrill Decl. ¶¶ 76–99; Yanacheak Decl. ¶¶ 18–23.  The pricing model also incorporates Midland's costs, which includes the cost of providing the premium bonus and agent commissions.  Depo. of Don Lyons 280:5–14; Yanacheak Decl. ¶ 8; Depo. of Michael Yanacheak, Vol. II, 48:7–14; see, e.g., Pls.' Ex. 2 at 209 (describing pricing model for the Veridian Plus annuity).

Although most annuities allow for withdrawal of 10% of the accumulation value after one policy year without penalty, a surrender charge is applied to withdrawals in excess of this amount.  Yanacheak Decl. ¶¶ 7–8.  These penalties applied to withdrawals that occurred before Midland had recovered its unamortized costs.  See, e.g., Ex. 1 at 117 (listing surrender charges of 22% for the first four years of the Legacy Bonus 11 policy).  In addition to surrender penalties, the annuities included the application of an "interest adjustment" to purchasers who surrendered or partially surrendered their annuity.  For the subclass of purchasers who were age 60 to 64 at the time of purchase, plaintiffs contend that this "penalty" was impermissibly applied in violation of California Insurance Code § 10127.13, which requires surrender penalty information to be disclosed on the cover of any annuity product.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

According to Midland, this interest adjustment enables it to credit higher rates to policyholders who do not take withdrawals from their annuities at an earlier date, by shifting some of the risk to those policyholders who do take such early withdrawals. Yanacheak Decl. ¶¶ 20–31.  Contrary to plaintiffs' contentions, Midland contends that this interest adjustment was in fact disclosed on the cover of the annuity contract.

## B.    The Sale of Midland's Annuities

Plaintiffs focus on the uniformity of the sales experience for all potential purchasers, which Midland achieves through the use of uniform sales brochures and disclosure statements.  Although the agents are otherwise independent and can sell other company's annuity products, Midland requires all agents to review the sales brochure and disclosure statement with the purchaser and have the purchaser sign the disclosure statement.  The agents must then countersign, attesting that "the Company disclosure material has been presented to the applicant. . . I have made no statements which differ in any significant manner from this material.  I have not made any promises or guarantees about the future value of any non-guaranteed elements."  Pls.' Ex. 1 at 69.

The brochure prominently advertises the premium bonus and tax-deferred growth opportunities, but no mention is made about Midland's recouping of its costs of providing the bonus and commissions to its agents.  See Depo. of Bryan Stout at 123:23–124:20; Pls.' Ex. 1 at 103.  In addition, Midland promotes the surrender charges and interest adjustment as features that allow the company to pay higher credited rates to those purchasers who do not engage in early withdrawals in excess of the penalty-free withdrawal amount, compared to annuity products that lack such features.  See Pls.' Ex. 1 at 146; Stout Depo. 100:23–102:18; 108:7–110:15.  Similar to the brochures and disclosure forms, the contracts are also uniform in plaintiffs' view for the seven products at issue.  Each of the contracts promises a specific bonus shall be provided to the purchaser; none disclose that the credited interest rate will ever be reduced as a result.  Moreover, all seven contracts contain uniform language regarding the indexing features, crediting of interest, and surrender penalties, with no reference to agent commissions.  Mot. at 8–9.

Midland, on the other hand, stresses the uniqueness of the agent-purchaser interactions that led to the sales of Midland annuities.  Because the agents who sell

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|----------|------------------------|------|----------------|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

Midland's products are independent, they represent their clients, not Midland, and do not follow any particular sales script or particular sales methods. The agents are provided with information as to how premium bonuses and commissions may affect interest rates, and Midland encourages agents to answer questions from prospective purchasers. See, e.g., Reed Decl. ¶¶ 14–20; Biklen Decl. ¶¶ 3, 31–32.[5]

Insurance agents who sell Midland products testify to the individualized nature of the inquiries and oral presentation that each engages in when selling annuities.[6] The varying backgrounds and financial sophistication of the agents and the clients they serve determines the means by which the annuities are sold. Opp'n at 7. And the certification all agents must sign—that they have made no statements that depart from the written materials—does not prevent agents from explaining or providing additional information about the annuity products to prospective purchasers. Id. at 8. This information includes explanations about the annuities' interest crediting and tax-deferred growth features, effect of the premium bonuses and commissions, and surrender charges and related interest adjustments. Id. at 9–11.[7]

C.      **Vaccarino and Tiegen's Purchases**

Vaccarino was 63 years old when she purchased two Midland Bonus 11 annuities, one with an initial premium of $112,214.15 and another for $70,261.54, on March 23, 2003. She states in her declaration that she signed the applicable disclosure form at the time of her purchase, and that she was not advised of any limitations on the 11% bonus,

---

[5] According to Midland's internal data, the 17,929 policies in the class were sold by thousands of different agents to over fifteen thousand purchasers. Decl. of Paul Schlitz ¶¶ 10–13.

[6] Nor are the sales materials or contracts at issue in this litigation uniform in all respects, according to Midland. Several different versions of the brochure and disclosure statement have been created for each class product, even if much of the information contained in these materials has remained constant. Opp'n at 7–8.

[7] The contracts themselves also disclose the surrender charge and interest adjustment features of the Class Products.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

nor of any offset for the commissions paid to her agent. Decl. of Rosalie Vaccarino ¶¶ 4–5, 8. On April 25, 2011, she withdrew $351.32 from one of her annuities, incurring surrender charges in the amount of $49.82 and an interest adjustment of $2.14. Id. ¶ 9.

Tegen bought a Legacy Bonus 11 annuity from Midland in the amount of $46,270.22 on February 17, 2004. Decl. of David Tegen ¶ 3. He states in his declaration that he reviewed the sales brochure, application, and disclosure statement for the annuity, but was not told of the effect of the bonus or sales commissions on the growth potential of his investment. Id. ¶¶ 4–7. Had he been informed of these details, he claims he would not have purchased the annuity. Id. ¶ 7.

### D.    Previous Litigation

In Peterman v. North American Co. For Life and Health Ins., Los Angeles Superior Court Case No. BC357194, the Superior Court certified a class of purchasers based on causes of action for fraud, violation of the UCL, breach of contract, and declaratory relief. These claims were premised upon similar theories of nondisclosure and breach of contract as the instant litigation, but the class was defined to include only purchasers over the age of 65. Pls.' Ex. 8. This case resulted in settlement. Plaintiffs allege, however, that Midland has not provided redress for purchasers age 64 and under, and plaintiffs seek to remedy this purported deficiency by way of the instant suit.

## III.    LEGAL STANDARD

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able to present claims on an individual basis." Haley v. Medtronic, Inc., 169 F.R.D. 643, 647 (C.D. Cal. 1996) (citing Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983)). Federal Rule of Civil Procedure 23 governs class actions. For a suit to be maintained as a class action, the proposed class must "satisfy the criteria set forth in subdivision (a). . . , and it also must fit into one of three categories described in subdivision (b)." Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., — U.S. —, 130 S. Ct. 1431, 1437 (2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

More than a pleading standard, Rule 23 requires the party seeking class certification to "affirmatively demonstrate . . . compliance with the rule." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. —, —, 131 S. Ct. 2541, 2551 (2011). This requires a district court to conduct "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." Id. However, the Supreme Court has strongly cautioned that "merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen Inc. v. Connecticut Ret. Plans & Trust Funds, — U.S. —, 133 S. Ct. 1184, 1195 (2013).

First, plaintiffs must demonstrate that the four requirements of Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 155 (1982) (quoting Califano v. Yamasaki, 442, U.S. 682, 701 (1979)).

Second, if a court finds that the Rule 23(a) requirements are met, the court must consider whether the class is maintainable under one of the three alternatives set forth in Rule 23(b). Dukes, 131 S. Ct. at 2548.  Plaintiffs here seek to maintain certification under Rule 23(b)(3), which requires "that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997)). If "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then adjudication on a representative basis is appropriate. Id. Otherwise, individualized adjudication is more appropriate. Therefore, the Court must balance concerns regarding the litigation of issues common to the class as a whole with questions affecting individual class members. In re N.D. Cal., Dalkon Shield IUD Products Liability Litig., 693 F.2d 847, 856 (9th Cir. 1982).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

In determining superiority, the court must consider the four factors of Rule 23(b)(3): (1) the interests that members in the class have in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigations concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely encountered in the management of a class action.  See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1190–1193, (9th Cir. 2001) (opinion amended on denial of reh'g, 273 F.3d 1261).

## IV.   DISCUSSION

### A.   Rule 23(a) Prerequisites

At the outset, the Court notes that there is no dispute as to the numerosity of the potential class, which comprises individuals who purchased approximately 17,000 Midland annuities in the aggregate.  Colbert Decl. ¶ 9; Pls.' Ex. 13.  And this class is readily ascertainable—an implicit requirement for class certification—from Midland's books and records.  The remaining prerequisites of Rule 23(a) are addressed in turn.

#### 1.   Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury . . . [and] [t]heir claims must depend upon a common contention . . . of such nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Dukes, 131 S. Ct. at 2551 (internal quotation marks and citations omitted).  "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."  Id. (citation omitted).

The Court finds that plaintiffs' claims present multiple common questions, capable of resolution through common proof, that will generate common answers.  The commonality inquiry does not require plaintiffs to demonstrate the "predominance" of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

common issues over individualized ones, nor the "cohesion" of the class.  See Dukes, 131
S. Ct. at 2556.  Instead, for purposes of satisfying Rule 23(a)(2), "even a single common
question" leading to a common answer will do.  Id. (citations and alterations omitted);
Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 589 (9th Cir. 2012) ("commonality
only requires a single significant question of law or fact").

     All of the annuity products at issue contain the bonus feature that plaintiffs contend
Midland recouped through the use of lower crediting rates, significant surrender charges,
and the interest adjustment.  In addition, Midland utilized product brochures and
disclosure forms that were nearly identical in promoting or disclosing the pertinent bonus
and growth potential, materials that form the crux of plaintiffs' claims for fraud and
breach of contract.  These same materials do not disclose the effect of the bonus or agent
commissions on interest rates, in plaintiffs' view, thus forming the basis for plaintiffs'
claims.  Moreover, each putative class member and their selling agent signed the
disclosure form, acknowledging that the purchaser had reviewed the materials and that
the agent made no statements differing in material respect from the written materials.

     Midland allegedly recouped the bonus and commissions and applied the interest
adjustment and surrender charges in a uniform manner across all of the annuity products.
Indeed, Midland does not dispute that the cost of providing the premium bonus and
paying agent commissions is recovered through the use of lower crediting rates over time,
but Midland has a different view of the propriety of this practice.  Regardless, the Court
cannot resolve the dispute about the merits of this alleged practice at the class
certification stage.  What matters is that Midland appears to have treated class members
in common fashion; there are not thousands of distinct decisions to recoup a bonus, for
example, that must be separately considered.  Cf. Ellis v. Costco Wholesale Corp., 657
F.3d 970, 982 (9th Cir. 2011) (finding that where "there is no evidence that the entire
class was subject to the same allegedly [impermissible] practice, there is no question
common to the class").  This is a sufficient showing of commonality for purposes of Rule
23(a)(2), because determining the propriety of Midland's practices will present multiple
common questions capable of common resolution.[8]

---

[8] Midland contends that class members were not treated uniformly because the
effect of sales commissions and the bonus on crediting rates cannot be isolated as to each

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

Defendant resists this conclusion, arguing that the "uniqueness" of each class members' experience when purchasing an annuity forecloses a finding of commonality here.  Opp'n at 22–23.  But the purported uniqueness of the each annuity transaction does not undermine the commonality of the questions identified herein.  The problem in Dukes, to which defendant cites repeatedly with little analysis, was that there was no common answer to the question of why any individual class member was disfavored or passed over for a promotion.  Here, there appears to be no dispute that Midland's practices were uniform across the Class Products.  The question that remains to be decided is whether these practices were permissible.

As such, adjudicating plaintiffs' claims for fraud, breach of contract, and violation of the UCL will present multiple common issues as to whether Midland's alleged practices were in fact fraudulent, unfair, or in breach of the parties' respective annuity contracts.  The commonality requirement is met here.

### 2.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Id.  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011) (quoting Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)).  This requirement serves to "assure that the interest of the named representative aligns with the interests of the class."  Wolin v. Jaguar Land Rover North Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010).  Thus, typicality is satisfied if the plaintiffs' claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).  In addition, in those circumstances where "there is a danger that absent class members

---

individual consumer; the effect would vary based on the other inputs into the pricing spread.  Midland does not dispute, however, that these rates are set to recoup its costs of paying the bonus and sales commissions to its agents.  The propriety of this practice presents a common issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

will suffer if their representative is preoccupied with defenses unique to it," class certification may be inappropriate. Ellis, 657 F.3d at 984 (quotation omitted).

On their face, the named plaintiffs' claims and the defenses asserted to these claims appear to be typical to the claims and defenses of the class as a whole, satisfying Rule 23(a)(3). As with the other members of the class, plaintiffs testify that they were presented with and reviewed the Midland sales materials; that they signed the disclosure statements; that Midland's agents countersigned the same; that they were then issued a form contract for their particular annuity; and that defendant followed the practices complained of here in crediting interest to their annuities. Defendant's primary defense to all of these claims will be on the merits—that any "recouping" of the bonus or commissions paid to agents was not fraudulent nor a violation of the pertinent annuity contracts.

Notwithstanding this significant showing of typicality between the named plaintiffs' claims and those of the class as a whole, defendant contends that the "facts" related to Vaccarino and Tegen's claims will be unique to their purchase of one or more Midland annuities. Defendant focuses on the specific interactions of each plaintiff with their financial advisors, their respective financial savvy and understanding of complex financial products, and their reasons for ultimately deciding to purchase a Midland annuity. Opp'n at 21; Supp. Opp'n at 3–6; see Decl. of Kathy J. Huang Ex. N (summarizing defendant's factual contentions with respect to the different purchase experiences, financial literacy, and reasons for Vaccarino and Tegen's purchases).

As to Vaccarino, her recollections of the purchase of her Midland annuity appear incomplete based on her deposition testimony, but this does not defeat her ability to represent the class. Whether or not she recalls the precise details of how she came to purchase her Midland annuities, her claims—and those of the class—are premised upon uniform representations contained in written marketing materials. And Vaccarino testified that she purchased the annuities "because of the 11 percent bonus that I was going to get to have my money grow," and would presumably testify to this effect at trial. Pls.' Ex. 28 (Vaccarino Depo.) at 274:21–275:14. Moreover, the Court does not find that Vaccarino's credibility is necessarily called into question by her making a "curious" partial withdrawal from one of her annuities in April 2011, after obtaining counsel, which resulted in her incurring a surrender charge and interest adjustment. See Supp. Opp'n at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

3–4.  Defendant's speculative contentions, even if proven, do not raise issues of credibility or fraud that would be disqualifying for a class representative, as these contentions are unrelated to the core issues in this case.  See Harris v. Vector Mktg. Corp., 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) (collecting cases, finding that purported credibility issues are not necessarily disqualifying).

In addition, the Court finds that any statute of limitations defense to Vaccarino's claims will not unduly preoccupy the case.  At most, defendant offers evidence that Vaccarino spoke with her current attorney, Ronald Marron, in 2006, after seeing an advertisement he had placed in a local newspaper.  TAC ¶ 37; Huang Decl. Ex. B at 63 (advertising Marron's services as an "investor advocate," stating "SENIORS BEWARE if you have purchased an annuity or life insurance that ties up your money, has enormous surrender charges, or undisclosed commissions.  You Do Have Legal Rights.").  Thereafter, she reportedly told her financial advisor that she was "not old enough to make it work," in reference to the 65-and-over class in the Peterman case for which Marron was also counsel of record.  Depo. of Brian E. Jackson at 292:15–294:18.  While defendant contends that this circumstantial showing demonstrates that Vaccarino's claims are time-barred, or that this issue will become a major focus at trial, the Court disagrees.  If in fact this issue becomes unduly preoccupying, a new class representative may be substituted at a later date.

Midland's challenge to Tegen's ability to adequately represent the class is also without merit.  Tegen's relative financial sophistication, on which Midland remains fixed, is largely irrelevant to the core issues of this case.  Whether a sophisticated investor or not, Tegen alleges that Midland fraudulently and in breach of his annuity contract deprived him of the full benefits he was entitled to, including the premium bonus.  See Pls.' Ex. 31 (Tegen Depo.) at 148:8–22.  Tegen's understanding of other financial products does not relate to his reliance (or lack thereof) on Midland's alleged representation regarding the bonus and growth potential of its products.

Nor does Midland's evidence demonstrate that Tegen will be subject to any unique defenses, including the statute of limitations.  Midland's contentions that Tegen "admitted reading and understanding complex documents issued in connection with various real estate investments," or that he expressed "longstanding displeasure with his Legacy Bonus 11 [annuity]," fails to explain how Tegen would have had any knowledge

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

of the alleged scheme that plaintiffs complain of in this litigation.  Midland's circumstantial evidence does not defeat plaintiffs' showing of Tegen's ability to act as a typical representative for the class.

In sum, defendant argues that the named plaintiffs' "histories and experiences are typical only of themselves—just as will be true for all other class members."  Supp. Opp'n at 6.  This is not an argument directed at the typicality requirement, but the predominance requirement of Rule 23(b)(3), which is addressed below.[9]  Accordingly, the Court finds that plaintiffs have shown that the typicality requirement is met here.

---

[9] Typicality issues related to the statute of limitations may be more problematic where the class is divided between members who would be subject to a potential statute of limitations defense and those would not be.  See, e.g., Tait v. BSH Home Appliances Corp., 289 F.R.D. 466, 2012 WL 6699247 (C.D. Cal. 2012) ("Plaintiff Tait is not typical of the entire Illinois Class because it appears that roughly three-quarters of the Illinois Class bought their Washers less than three years prior to Plaintiffs filing their Complaint, and thus most of the Illinois Class would not be subject to statute of limitations defense that Defendants can raise against Plaintiff Tait.").  Here, because Midland stopped selling six of the seven Class Products before March 2006, Midland's potential statute of limitations defense would apply to the vast majority of the class members.  See Opp'n at 28 (citing Decl. of Samuel J. Park ¶ 5).  Plaintiffs would be typical representatives for these absent class members.

The sole exception is that Midland stopped selling the Veridian Plus annuity in April 2009.  Therefore, it may be necessary for plaintiffs to seek a new class representative for those class members to which defendant could not assert any statute of limitations defense.  The Court may still certify plaintiffs' proposed class in full, "conditioned upon the substitution of another named plaintiff" for the limited numbers of individuals who bought Veridian Plus annuities within the applicable statute of limitations period for plaintiffs' particular claims (three years for fraud claims; four years for breach of contract and UCL claims).  See Tait, 2012 WL 6699247 at *8.  But given that the vast majority of class members would be subject to this potential defense, and that defendant has not voiced an objection along these lines, plaintiffs appear to be adequate representatives for the class as a whole.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

### 3.    Adequacy

To find that the named plaintiffs will "fairly and adequately protect the interests of the class," Rule 23(a)(4), the Court must ask whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and whether "the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class." Hanlon, 150 F.3d at 1020.

First, plaintiffs' counsel has prosecuted a number of similar actions with respect to deferred annuity products in the past, and the Court does not doubt that they will continue to prosecute this action vigorously, as counsel have done to date.  And plaintiffs seek the same relief under the same legal theories as the remainder of the class, making them adequate individuals to represent the interests of the class.

Defendant maintains that the proposed class will suffer from intraclass conflicts, because some annuity purchasers have actually benefitted or will benefit from the very policies of which the named plaintiffs complain.  See Merrill Decl. ¶¶ 122–124; Yanacheak Decl. ¶ 29.  However, defendant's speculation does not identify the sort of intraclass conflict that would render Vaccarino or Tegen inadequate class representatives. For example, if the surrender charge is in fact being unlawfully applied to the Senior Subclass, as plaintiffs contend, then the fact that this would purportedly alter the "economic fundamentals of the annuities' groupwide risk pooling" is irrelevant.  An unlawful charge is an unlawful charge, which could not give rise to intraclass conflicts.

Taking a further example, if Midland did not apply the interest adjustment to any surrenders in excess of the penalty-free withdrawal amount, all class members would have the benefit of not being subject to this additional penalty.  That modifying or negating this feature of Midland's annuities would potentially hurt Midland's bottom line, which would potentially be passed on to class members in the form of lower credited rates, is nothing more than speculation on Midland's part.  See Yanacheak Decl. ¶¶ 30–31.  The proposed class is not the sort of class that will clearly result in "'winners' and 'losers'" such that Vaccarino and Tegen will be inadequate class representatives.  Cf. Duchardt v. Midland Nat. Life Ins. Co., 265 F.R.D. 436 (S.D. Iowa 2009) (finding that proposed named plaintiffs would be inadequate class representatives where the remedies plaintiffs sought would result in a large number of class members obtaining lower

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                     0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

credited rates to their accounts).  Accordingly, the Court finds that plaintiffs have
demonstrated that they will be adequate class representatives, as will their counsel.

**B.     Predominance**

Because all of the prerequisites of Rule 23(a) are satisfied, the Court turns to the
question of whether plaintiffs have carried their burden with respect to Rule 23(b).  As
before, the Court need not determine the merits of plaintiffs' claims, but only whether
"common questions 'predominate over any questions affecting only individual [class]
members.'"  Amgen, 133 S. Ct. at 1196 (quoting Fed. R. Civ. P. 23(b)(3)).  Plaintiffs, in
other words, must demonstrate that common questions predominate, but need not "prove
that [any] predominating question will be answered in their favor."  Id.

Because the predominance inquiry begins "with the elements of the underlying
[claims]," the Court addresses each of plaintiffs' claims in turn.  Erica P. John Fund, Inc.,
v. Halliburton Co., ─── U.S. ───, ───, 131 S. Ct. 2179, 2184 (2011).

**1.     Common Law Fraud Claims**

Under California law, the elements of a claim for fraud are "(a) misrepresentation
(false representation, concealment, or nondisclosure); (b) knowledge of falsity (or
'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e)
resulting damage."  Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996) (citations
omitted).  To prove reliance, a plaintiff need not show that the misrepresentation was the
"sole or even the predominant or decisive factor" in his or her decision making.  Engalla
v. Permanente Med. Grp., Inc., 15 Cal. 4th 951, 977 (1997).  Instead, the representation
need only have been a "substantial factor" in influencing this decision.  Id.

Moreover, the California Supreme Court has long recognized that "a presumption,
or at least an inference, of reliance arises wherever there is a showing that a
misrepresentation was material."  Id. (citing Vasquez v. Superior Court, 4 Cal. 3d 800,
814 (1971)).  Materiality, in turn, demands that "a reasonable man would attach
importance to [the] existence or nonexistence [of a misrepresentation] in determining his
choice of action in the transaction in question."  Id. (quotation omitted).  See Jordan v.
Paul Fin., LLC, 285 F.R.D. 435, 465 (N.D. Cal. 2012) (applying a three-part inquiry to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|----------|----------------------|------|---------------|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

determine if plaintiffs are entitled to a presumption of reliance on a claim for fraudulent omission).

Plaintiffs allege that Midland committed fraud in two particular ways. First, Midland promised to provide putative class members with a bonus, yet in fact provided no bonus at all (by "clawing" the bonus back over time). TAC ¶ 35. Second, Midland represented that its annuities would accumulate value that is "'linked to stock indexes, tax-deferred growth, and other benefits so as to allow purchasers to 'achieve your goals for retirement.'" Id. ¶¶ 17, 35. Contrary to this alleged representation, Midland "failed to disclose and concealed" that it undermined this growth potential by paying "high sales commissions" to the agents who sold its products. Id.

Based on these allegations, plaintiffs contend that predominance is satisfied for their common law fraud claims, because all class members were exposed to the same alleged misrepresentations. In response, Midland offers three reasons why predominance is not met here—namely, individualized issues that will likely arise with respect to proving the reliance of absent class members, defendant's statute of limitations defense, and damages determinations.[10]

### (a)    Reliance

Midland argues that a presumption of reliance may not apply because of the *sui generis* nature of class members' interactions with the particular agent who sold them their policy. The sales presentations made by these agents were not limited solely to the

---

[10] Midland also characterizes plaintiffs' fraud claims as based on alleged concealment, rather than affirmative misrepresentations, a characterization that plaintiffs dispute. Opp'n at 24; Reply at 5, n. 1. Plaintiffs' claims may well be grounded in both alleged misrepresentation and concealment of material facts, but determining the proper classification of their claims is largely immaterial to the instant motion. The question is whether common issues will predominate, because defendant allegedly affirmatively represented the effect of a bonus to the class, and failed to disclose the "truth" about this bonus and high commissions. See Jordan, 285 F.R.D. at 465 (adopting a presumption of reliance on the basis of alleged, uniform fraudulent omissions ).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

written materials, Midland contends, but instead accompanied by tailored advice from the individual agents, based upon a purchaser's sophistication and financial goals. Midland maintains that the evidence shows that agents explained, emphasized, and disclosed additional information about particular features of the Class Products in widely divergent ways. Opp'n at 7–11.

But the fact that each class member engaged with a specific agent during a purportedly "individually tailored sales meeting[]" does not demonstrate that individual issues relevant to the merits of plaintiffs' case will predominate over common ones. As numerous courts have found, where a defendant allegedly makes written representations to the class as a whole, a presumption of reliance may arise. See, Jordan, 285 F.R.D. at 464–66 (certifying class based on a presumption of reliance under California law); Plascencia v. Lending 1st Mortgage, 2011 WL 5914278 (N.D. Cal. Nov. 28, 2011) (sane); In re Nat'l Western Life Ins. Deferred Annuities Litig., 268 F.R.D. 652 (S.D. Cal. 2010) (same); Iorio v. Allianz Life Ins. Co. of N. Am., No. 05-cv-0633, 2008 WL 8929013 (S.D. Cal. July 8, 2008) (same). The Court finds that the three-part analysis set forth in Plascencia is a useful framework for determining when, under California law, a presumption of reliance may arise, generating a common question readily capable of classwide resolution, and adopts this framework here. See Plascencia, 2011 WL 5914278, at *1–3; Jordan, 285 F.R.D. at 464–66 (adopting same).

First, the jury in this case could find, on a class-wide basis, that a reasonable person would have found Midland's alleged representations to be material. See Vasquez, 4 Cal.3d at 814 n. 9 (setting forth an objective standard for determining when a representation or omission may be considered material). Indeed, representations concerning the potential value of the products that plaintiffs were purchasing are the type of material representations courts have often found suitable for class treatment.

Midland resists this conclusion, contending that the issue of materiality will vary from consumer to consumer, based on these consumers differing expectations and experiences in purchasing their annuities, precluding a jury from determining whether the alleged representations are material for the class as a whole. But Midland does not directly dispute, given the prominence of the bonus and growth proclamations in its marketing materials, that these representations concerned facts that would appear to be material to any reasonable prospective purchaser. A jury could thus find that any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

reasonable person would attach significance to the alleged misrepresentations which concerned the value of the Class Products.  See, e.g., Gutierrez v. Wells Fargo Bank, NA, 704 F.3d 712, 729 (9th Cir. 2012) (finding appropriate for class certification material, misleading statements with respect to overdraft fees); Mass. Mut. Life Ins. Co. v. Superior Court, 97 Cal. App. 4th 1282, 1293 (2002) (finding material defendant's failure to disclose that defendant planned to "ratchet down" the dividends paid on its life insurance product over time).

Midland's cited cases are distinguishable, as none of these cases involved the sort of alleged misrepresentations, like those here, that go directly to the value of a particular product.  See Fairbanks v. Farmers New World Life Ins. Co., 197 Cal. App. 4th 544, 565 (2011) (finding materiality could not be resolved on a classwide basis where, inter alia, the "plaintiffs' own evidence [demonstrated] that roughly half of the . . . policyholders surveyed would have purchased the policy even if they had been told that the premiums were not guaranteed to keep the policy in force to maturity"); Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1024 (9th Cir. 2011) (finding that many consumers may have chosen to sign up for a defendant's marketing program for "myriad reasons," defeating any classwide showing of materiality).  Accordingly, the Court finds that a determination of materiality is subject to classwide proof.

Second, all class members here received uniform representations, and Midland treated the proposed class the same in determining the credited rates to apply to their accounts, which is the practice plaintiffs challenge by way of their fraud claims.  In particular, all class members signed a disclosure form, acknowledging that they had reviewed the alleged misrepresentations at issue, and their agent countersigned to acknowledge that he or she made no statements that materially differed from these materials.  See, e.g., In re Nat'l Western Life, 268 F.R.D. at 664 (finding predominance met where standardized sales materials were used, disseminating the alleged misrepresentations to every class member); Negrete, 238 F.R.D. 482, 496 (C.D. Cal. 2006) (same); Plascencia, 2011 WL 5914278, at *2 (certifying class where the "[d]efendants [were] alleged to have acted in a uniform way toward all class members").  Cf. Kaldenbach v. Mut. of Omaha Life Ins. Co., 178 Cal. App. 4th 830, 851 (2009) (finding individualized issues would predominate where, inter alia, the defendant's "training materials and methods were not uniform [and] there was no requirement insurance agents provide any written materials or illustrations to purchasers during a sales

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

presentation"); <u>Gregurek v. United of Omaha Life Ins. Co.</u>, 2009 WL 4723137, at *7
(C.D. Cal. Nov. 10, 2009) (same).  In light of the signed disclosure statements that
formed a part of every purchase of a Class Product, Midland does not contend to the
contrary.

Nonetheless, Midland maintains that individual questions will predominate
because of oral disclosures that agents made in addition to (not in lieu of) the disclosures
contained in Midland's written materials.  But as is evident from the cases cited herein,
this argument has often been made and just as often rejected in circumstances where a
defendant required agents to adhere to its marketing materials in selling its products.  <u>See,
e.g.</u>, <u>Yokohama</u>, 594 F.3d at 1093 ("Plaintiffs' case will not require the fact-finder to
parse what oral representations each broker made to each plaintiff.  Instead, the
fact-finder will focus on the standardized written materials given to all plaintiffs and
determine whether those materials are likely to mislead consumers acting reasonably
under the circumstances."); <u>Jordan</u>, 285 F.R.D. at 464 (rejecting the defendant's
argument that "the substance of any conversations with a mortgage broker" could defeat
predominance).

Moreover, even considering the purported oral disclosures, the Court is not
convinced that the facts that agents occasionally disclosed to prospective purchasers
would be sufficient to negate plaintiffs' fraud claims.  Defendant's evidence demonstrates
that agents at most disclosed that the bonus "may" affect credited rates, Opp'n at 9–10,
which is not a sufficient disclosure, according to plaintiffs' view of the merits, to render
Midland's disclosures adequate.  Indeed, any agent who specifically disclosed that the
bonus is in fact not a bonus would have run afoul of the certification statement contained
in the disclosure form.  And Midland has not identified any purchasers to whom an agent
disclosed the precise mechanics of how the bonus and commission affects credited rates.
<u>See</u> Pls.' Ex. 24 at 616–624.  Without adjudicating the merits of plaintiffs' contentions,
therefore, the Court agrees that the purported disclosures made by some agents to some
purchasers are not sufficient to render plaintiffs' fraud claim unsuitable for class
treatment.

At the hearing, Midland pressed its argument that the Court or a jury would be
required to probe the details of each annuity transaction and how the class products
actually operated in practice, defeating any presumption of classwide reliance or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

predominance of common issues.  See also Opp'n at 10, n. 8.  Defendant's argument is premised on the fact that the bonus is not "phony," as plaintiffs contend, because this feature of the annuity products has real value for class members for a variety of reasons. Moreover, the class products all provided and are providing "growth" to those who purchased them, according to defendant—the named plaintiffs themselves have achieved substantial increase in their accumulation value.  Because the bonus in fact has real value and the products achieved growth, defendant argues that there were no representations made to the class as a whole.

But Midland mischaracterizes plaintiffs' claim in so arguing.  Plaintiffs' claim is not that the bonus necessarily lacks value or that the products did not experience growth, but that Midland's purportedly material representations would deceive a reasonable consumer into believing that Midland would not recoup any of the cost of the bonus or the cost of high sales commissions through lower credited rates.  See Reply at 16 (stating the "true facts" as "that the amount of the bonus would be recouped through lower rates, [and that] the amount of the sales commissions would reduce the rates, in other words, come out of purchasers' premiums").  If in fact defendant's alleged misrepresentations would not be construed as such by a reasonable consumer, plaintiffs claims will fail on the merits, but this issue may be adjudicated classwide.

Third, both named plaintiffs testified that they in fact relied on these alleged representations in making their purchasing decisions, establishing "actual reliance."  Id.; see also Iorio, 2008 WL 8929013, at *25.  As addressed previously, the Court does not find defendant's argument that neither of the named plaintiffs relied on the alleged representations to be persuasive.

Accordingly, because plaintiffs have shown that uniform and likely material representations were communicated to the class as a whole, the Court finds that plaintiffs have demonstrated that a presumption of classwide reliance is properly invoked on their claim for fraud.

**(b)     Damages**

Midland's next argument is that the need for individualized damages determinations defeats plaintiffs' motion for class certification, focusing particular

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

attention on the Supreme Court's decision in <u>Comcast v. Behrend</u>, — U.S.—, 133 S. Ct. 1426 (2013).

As the Ninth Circuit has reiterated post-<u>Comcast</u>, "[i]n this circuit . . . damage calculations alone cannot defeat certification."  <u>Leyva v. Medline Indus. Inc.</u>, 11-56849, — F.3d —, 2013 WL 2306567, at *3 (9th Cir. May 28, 2013) (quoting <u>Yokoyama</u>, 594 F.3d at 1094).  Properly understood, <u>Comcast</u> stands for the proposition that "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability" for a class to be certified under Rule 23(b)(3).  <u>Leyva</u>, 2013 WL 2306567 at *3; <u>see also</u> <u>Munoz v. PHH Corp.</u>, 08-CV-0759, 2013 WL 2146925, at *24 (E.D. Cal. May 15, 2013) (finding that the flaw in the plaintiffs' damages theory in <u>Comcast</u> was that "the damage methodology did not measure the damages attributable to plaintiffs' theory of liability").

While Court agrees with plaintiffs that "the Court need not decide the precise method for calculating damages at this stage," <u>Jordan</u>, 285 F.R.D. at 466, plaintiffs must still offer a method that tethers their theory of liability to a methodology for determining the damages suffered by the class.  Without such a theory, the Court cannot certify plaintiffs' proposed class as to damages, even if such a class could be appropriately certified as to liability only.  In <u>Leyva</u>, for example, the court distinguished <u>Comcast</u> in finding that damages could be readily calculated on a classwide basis, based on the defendant's own admissions in its notice of removal with respect to the plaintiffs' wage and hour claims.  2013 WL 2306567, at *3.  The court found that this evidence demonstrated that "damages could feasibly and efficiently be calculated once the common liability questions are adjudicated."  <u>Id.</u>

Here, plaintiffs have not offered a method as to how damages could be calculated in this case once the liability questions are adjudicated.  Certainly, the fact that Midland maintains extensive data on its purchasers' accounts, and that credited rates are determined through actuarial software that accounts for Midland's costs (including the bonus and commissions), will assist plaintiffs in presenting evidence of damages.  But the fact that this evidence exists only goes so far.  Unlike <u>Leyva</u>, it is not facially apparent from plaintiffs' theory of liability (or defendant's notice of removal) that damages will be readily ascertainable classwide, nor has Midland conceded as much.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

Plaintiffs argue that they need not present a damages theory tailored to this particular case, offering instead the damages theories or expert declarations from various other cases involving deferred annuities, including Nat'l Western, Negrete, or the Peterman litigation.[11] The Court finds that this showing is insufficient. Although Peterman involved similar annuities sold by Midland, plaintiffs point only to the oral argument transcripts from the class certification and decertification hearings before Judge Kuhl, not any specific model that was advanced in that case, which does little to advance plaintiffs' cause in the present litigation. In addition, references to expert testimony and damages theories from the other class actions concerning deferred annuity products are similarly deficient. To the extent that the expert in these cases offered a declaration pertaining to a wholly different set of annuities, the Court cannot merely extrapolate these methods to the precise claims that plaintiffs assert here.

Accordingly, the Court finds that plaintiffs motion to certify their claims for damages in this case should be denied without prejudice. If plaintiffs offer a damages methodology that tethers their theory of liability to the damages suffered by each class member, certification as to damages and liability will likely be appropriate.

### (c)    Statute of Limitations

Midland's final contention—that the "individualized" nature of the statute of limitations inquiry also precludes class certification—is without merit. Indeed, "[t]he Ninth Circuit has multiple times . . . [held] that individual questions about when class members actually discovered or 'should have discovered' the elements of their claims do not predominate where, as here, plaintiffs' theory is that defendant's own omissions or deception resulted in plaintiffs remaining unaware about their injury or its cause." Tait, 2012 WL 6699247 at *19 (citing Cameron v. E.M. Adams & Co., 547 F.2d 473, 478 (9th Cir. 1976) and Williams v. Sinclair, 529 F.2d 1383, 1388 (9th Cir. 1975)).

---

[11] Midland objects to plaintiffs' references to a variety of evidence from experts in other cases as to how damages may be calculated in a case such as this one, arguing that such evidence is irrelevant. Def.'s Ex Parte App. to Strike at 9–11; Def.'s Opp'n to Pl.'s Reply Evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

The reason for this principle is straightforward and applies with equal force here: plaintiffs' theory as to why application of the "delayed discovery" rule is appropriate in this case is subject to common proof on a classwide basis.  Id.; see also Schramm v. JPMorgan Chase Bank, N.A., CV09–09442, 2011 WL 5034663, *11–12 (C.D. Cal. Oct. 19, 2011) (noting that "[c]ourts have been nearly unanimous" in so finding).  Even if a class member was on notice of the potential fraud, Midland offers no evidence as to how purchasers would have learned of the alleged scheme outside of the three-year statute of limitations period.  This contrasts sharply with the cases cited in Midland's opposition, where the defendant in each of those cases offered evidence that there was widespread dissemination or publicity of the facts comprising the plaintiff's claims.  See O'Connor v. Boeing N. Am., Inc., 197 F.R.D. 404, 414 (C.D. Cal. 2000); Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 316 (4th Cir. 2006).  Accordingly, the Court finds that Midland's statute of limitations defense does not present individual inquiries sufficient to defeat plaintiffs' showing of predominance.

Based on a consideration of the foregoing, the Court concludes that the predominance requirement is met as to liability for plaintiffs' fraud claims, but not as to damages.

**2.    UCL Claims**

The UCL prohibits conduct that is unlawful, fraudulent, or unfair.  Rubio v. Capital One Bank, 613 F.3d 1195, 1204 (9th Cir. 2010).  "Each of these three adjectives captures a separate and distinct theory of liability."  Id. (citation and quotation omitted).  Plaintiffs seek to certify claims under all three theories.[12]  Under each of these theories, the Court finds that plaintiffs have demonstrated that common issues will likely predominate.

---

[12] Defendant also raises an argument with respect to its statute of limitations' defense to plaintiffs' UCL claims.  For the same reasons discussed above for plaintiffs' fraud claims, this argument is unavailing.  In addition, defendant argues in its ex parte application that it has been prejudiced by plaintiffs' contention in reply that they seek class certification on all three prongs of the UCL, consistent with the allegations in plaintiffs' TAC.  Defendant's argument is belied by its own opposition, which addresses each of plaintiffs' three theories.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

**(a)    Fraudulent**

First, as with plaintiffs' common law fraud claim, "a business practice is fraudulent under the UCL if members of the public are likely to be deceived."  <u>Davis v. HSBC Bank Nevada, N.A.</u>, 691 F.3d 1152, 1169 (9th Cir. 2012) (citing <u>Puentes v. Wells Fargo Home Mortg., Inc.</u>, 160 Cal. App. 4th 638 (2008)).  However, unlike a common law fraud claim, only the named plaintiffs need demonstrate that they relied on the alleged misrepresentations to their detriment.  <u>In re Tobacco II Cases</u>, 46 Cal. 4th 298, 324–326 (2009); <u>see</u> <u>Fairbanks v. Farmers New World Life Ins. Co.</u>, 197 Cal. App. 4th 544, 562 (2011) ("A representative plaintiff need not prove that members of the public were actually deceived by the practice, relied on the practice, or suffered damages.")

Because plaintiffs' claims under the fraud prong of the UCL are premised on the same allegations and evidence as their common law fraud claim—that Midland recouped the bonus and commissions paid to its agents—the Court finds that common issues will predominate over individual ones with respect to this claim as well.

**(b)    Unfair**

Second, after the California Supreme Court's decision in <u>Cel–Tech Comms. Inc. v. L.A. Cellular Tel. Co.</u>, 20 Cal. 4th 163 (1999), California courts are divided as to the proper standard for determining whether a practice is "unfair" under the UCL.  <u>See</u> <u>Jolley v. Chase Home Fin., LLC</u>, 213 Cal. App. 4th 872, 907 (2013).  Before <u>Cel-Tech</u>, courts held that conduct is unfair when it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." <u>S. Bay Chevrolet v. Gen. Motors Acceptance Corp.</u>, 72 Cal. App. 4th 861, 886–87 (1999) (internal quotation marks omitted).  This test requires courts to balance "the utility of the defendant's conduct against the gravity of the harm to the alleged victim." <u>Id.</u> (internal quotation marks omitted).

In <u>Cel-Tech</u>, the court held that "unfair" is limited to "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." <u>Id.</u> at 187.  However, the court expressly limited its holding to actions "by a competitor alleging anticompetitive practices."  <u>Id.</u> at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

187, n. 12.  After <u>Cel-Tech</u>, "some courts in California have extended the Cel–Tech definition to consumer actions, while others have applied the old balancing test, or borrowed the three-pronged test set forth in the FTC Act."  <u>Davis</u>, 691 F.3d at 1170. Still other courts have found "that the public policy which is a predicate to a claim under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions."  <u>Jolley</u>, 213 Cal. App. 4th at 907.

Regardless of the proper standard under California law, this Court has already found that plaintiffs have adequately alleged a claim under the unfairness prong, based on their allegations that Midland impermissibly used the interest adjustment to shift the risk of changing interest rates from itself to plaintiffs, without disclosing this practice in a clear and conspicuous fashion.  See Dkt. No. 68; TAC ¶ 40.  Plaintiffs argue that Midland's failure to disclose this provision adequately renders it an unenforceable penalty, and that this issue—the enforceability of the interest adjustment—can be adjudicated on a classwide basis.

Midland disputes plaintiffs' characterization and understanding of this provision of the annuity contracts, and again argues that many class members would have been on notice of this provision through oral disclosures.  These arguments, however, are largely directed to the merits of plaintiffs' claims, not whether common issues will predominate. Plaintiffs' theory of liability is that Midland's uniform failure to disclose this additional "penalty" in the annuity contracts themselves renders it unenforceable on a classwide basis.  See Arce v. Kaiser Found. Health Plan, Inc., 181 Cal. App. 4th 471, 490 (2010) ("appellate courts have recognized that a systematic breach of certain types of contracts (e.g., breaches of standard consumer or producer contracts involved in a class action) can constitute an unfair business practice under the UCL") (quotation omitted).  Moreover, whether a class member "never intended to take a withdrawal" under their policy is immaterial, as Midland does not dispute that any class member who did take a withdrawal above the penalty-free limit would be subject to the interest adjustment.  This sort of claim, based upon conduct that is allegedly uniform to the class, is suitable for class treatment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

### (c)    Unlawful

Third, with respect to the unlawful prong, California's UCL "borrow[s] violations of other laws and treats" them as unlawful business practices "independently actionable under section 17200." Farmers Ins. Exch. v. Super. Ct., 2 Cal. 4th 377, 383 (1992) (quotation omitted).  "Violation of almost any federal, state, or local law may serve as the basis for a UCL claim" under the unlawful prong.  Plascencia v. Lending 1st Mortgage, 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008).

The Court has previously found that plaintiffs adequately stated an "unlawful" claim under California Insurance Code § 10127.13, which sets forth certain notice requirements for surrender charges in annuity contracts for senior citizens.  Dkt. No. 68.  Plaintiffs contend that Midland failed violated this section by failing to disclose the surrender penalties and associated interest adjustment per the specific requirements contained therein, and that this violation renders the surrender charge unenforceable.  TAC ¶¶ 20–22.  They seek to certify a Senior Subclass with respect to this claim.

Midland contends that individual issues will predominate in adjudicating this claim, because many members received adequate notice of the surrender charge and interest adjustment during the "free-look" period that is mandated by California Insurance Code § 10127.10.  Because policyholders had to initial next to the surrender charge schedule in the disclosure statement, in addition to oral disclosures made by agents, Midland argues that it "effectively and actually" complied with section 10127.13.  In Midland's view, determining whether substantial compliance was achieved will depend on the vagaries of individual class members understandings and interactions with their agent.

The Court disagrees, as Midland's argument for substantial compliance challenges the merits of plaintiffs' claims.  Plaintiffs' theory is straightforward—Midland's non-compliance with the precise terms of section 10127.13 renders the surrender charge and interest adjustment unenforceable.  The merits of this theory can be addressed on a classwide basis, including the issue Midland raises of whether "substantial compliance"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

is sufficient to escape liability.[13]  Because the case law does not support the notion that substantial compliance is sufficient, adjudicating this claim does not present individual issues that must be addressed.  Therefore, as plaintiffs' theory of liability at present raises more common issues than individual ones, the Court finds that predominance is met for plaintiffs' unlawful practices claim under the UCL.

### (d)     Causation and Restitution

Midland further contends that causation and the need to determine the proper amount of restitution, per class member, for any violations of the UCL present further obstacles to class certification.

First, as to causation, Midland is correct that "one who was not exposed to the alleged misrepresentations and therefore could not possibly have lost money or property as a result of the unfair competition is not entitled to restitution." Pfizer Inc. v. Superior Court, 182 Cal. App. 4th 622, 631 (2010); see also Daro v. Superior Court, 151 Cal. App. 4th 1079, 1099 (2007) ("In short, there must be a causal connection between the harm suffered and the unlawful business activity.").  But this merely states the obvious.  As before, Midland's argument that "written or oral disclosures" by agents above and beyond those disclosures in the uniform marketing materials would create predominating, individualized issues as to causation is unpersuasive.  The Court has already found that any purported disclosures are insufficient to undermine the causal nexus that plaintiffs have demonstrated they could establish on a classwide basis with respect to their fraud claims, based on uniform misrepresentations to which all class members were exposed.

Second, factual disputes as to the proper amount of restitution for each class member present the need for individualized damages determinations.  At this juncture, plaintiffs' UCL claims suffer from the same shortcomings as plaintiffs' fraud claims—

---

[13] Even if only twenty percent of the class has incurred surrender charges (and a smaller percentage interest adjustments), injunctive relief may still be warranted for the class as a whole.  All class members are potentially subject to these penalties.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

plaintiffs do not offer a model for determining damages that flow from the conduct that they challenge by way of this suit.  Accordingly, the Court finds that common questions predominate as to defendant's potential liability under the UCL, but not as to restitution.

### 3.    Breach of Contract Claims

To prevail on a claim for breach of contract, a plaintiff must prove (1) the existence of a contract, (2) the plaintiff's performance or excuse for non-performance of the contract, (3) the defendant's breach, and (4) resulting damage.  Reichert v. General Ins. Co. of America, 68 Cal. 2d 822, 830 (1968).  Plaintiffs allege that the annuity contracts at issue promise a "bonus" to the annuity's "Accumulation Value" and credit returns annually.  TAC ¶ 51.

Plaintiffs claim that Midland expressly breached the annuity contracts and breached the implied covenant of good faith and fair dealing based on a number of theories.  First, plaintiffs contend that Midland breached the contracts' bonus provisions by failing to provide an actual bonus.  TAC ¶ 53.  Second, Midland allegedly breached its implied promise to credit returns consistent with the "growth" objective of the annuity products, by impermissibly reducing annual returns to compensate for the high sales commissions.  Id. ¶¶ 54–55.  Third, plaintiffs allege that Midland's application of the interest adjustment was a further breach, because this adjustment amounted to an unenforceable, "wholly unintelligible" penalty.  Id. ¶¶ 58–59.  Finally, the Senior Subclass asserts a claim for breach of contract based on the application of the surrender charge without the warning provided for in the California Insurance Code.  Id. ¶ 60.

Courts have long found that "claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action."  See Kleiner v. First Nat'l Bank of Atlanta, 97 F.R.D. 683, 691 (N.D. Cal. 1983).  This case, based on uniform annuity contracts, appears to be no different.  Moreover, where there are ambiguities in the language of a contract, such that resort to extrinsic materials is appropriate, the court's role is "not . . . to speculate on the policyholder's abstract expectations, but rather to consider reasonable expectations defined by the insurer's policy language."  Haynes v. Farmers Ins. Exchange, 32 Cal.4th 1198, 1214 (2004).  Accordingly, the Court agrees that "even assuming that the contractual provision at issue were ambiguous, the subjective expectations of an insured class member would have little if any bearing on the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

breach of contract analysis."  Yue v. Conseco Life Ins. Co., 282 F.R.D. 469, 476 (C.D.
Cal. 2012).  These claims based on Midland's uniform policy language are appropriate
for class certification.[14]

Midland contends that a decision from the Eight Circuit, Avritt v. Reliastar Life
Ins. Co., compels the conclusion that individualized adjudication of plaintiffs' claims for
breach of the covenant of good faith and fair dealing will be required.  615 F.3d 1023
(8th Cir. 2010).  Avritt, applying Washington law, concluded that common issues would
not predominate where "evidence of the parties' justified expectations would be required
to establish a breach of the duty of good faith and fair dealing," and that these
"expectations are likely to vary among members of the putative class."  Id. at 1032.
Whatever the import of Avritt for Washington law, controlling California precedent is to
the contrary.  The duty of good faith and fair dealing is assessed under an objective
standard under California law, making this claim suitable for class treatment.  See Lazar
v. Hertz Corp., 143 Cal. App. 3d 128, 141 (1983) (holding that "[t]he essence of the good
faith covenant is objectively reasonable conduct," and certifying class on this claim);
Yue, 282 F.R.D. at 476 (same).

Accordingly, the Court finds that common issues predominate as to liability under
plaintiffs' implied breach of contract claims.  The same issues of determining the
damages attributable to plaintiffs' theory of liability, however, preclude certification at
this juncture.

**C.    Superiority**

Finally, the Court considers whether "a class action is superior to other available
methods for fairly and efficiently adjudicating the controversy," based upon: (a) class
members' individual interests in litigating separate actions; (b) the extent of any litigation
already ongoing by class members; (c) whether litigation ought to be concentrated in a
particular forum; and (d) any management difficulties that are likely to be encountered.
Fed. R. Civ. P. 23(b)(3).

---

[14] Midland's further contentions, premised upon the statute of limitations, are the
same as those addressed previously.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5858 CAS (MANx) | Date | June 17, 2013 |
|---|---|---|---|
| Title | ROSALIE VACCARINO V. MIDLAND NATIONAL LIFE INSURANCE COMPANY, ET AL. | | |

 

The Court concludes that a class action will be the superior method for fairly adjudicating the thousands of claims that are the subject of this litigation. This case presents a number of issues capable of resolution with a "single stroke," which makes the class action vehicle the most effective method for fairly and efficiently adjudicating class members' rights. Moreover, there has been no showing that individual class members would otherwise pursue individual actions. Accordingly, class litigation is superior to other methods for fairly adjudicating this controversy.

## V.    CONCLUSION

In accordance with the foregoing, the Court DENIES plaintiffs' motion for class certification without prejudice. The Court finds that plaintiffs have demonstrated that all of the Rule 23 requirements as to liability are met for all of the claims discussed herein. However, plaintiffs must offer a damages model that tethers their theory of liability to the injuries allegedly suffered by each class member for certification to be appropriate.

Accordingly, plaintiffs must offer a plausible, classwide method of proving damages as well as restitution on a renewed motion in order for class certification to be appropriate.

IT IS SO ORDERED.

|  | 00:31 |
|---|---|
| Initials of Preparer | CMJ |